UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERICA S.,<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 2:26-CV-500-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered Plaintiff's testimony, her residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence four of

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed her application for DIB on April 25, 2022, and her application for SSI on March 10, 2023, alleging disability as of April 16, 2022. Administrative Record ("AR") 118–20. Her claims were denied initially on August 23, 2023, and upon reconsideration on July 12, 2024. AR 118–19, 142–43. A hearing was held before ALJ Wendy Hollingsworth ("the ALJ") on February 11, 2025, who issued a decision denying Plaintiff's claim on March 21, 2025. AR 17–38. The Appeals Council denied Plaintiff's request for review on December 9, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. From this decision, Plaintiff filed a complaint with this Court on February 17, 2026, seeking judicial review of the ALJ's decision denying benefits. Dkt. 5.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III. Discussion**

Plaintiff argues that the ALJ erred in evaluating: (1) her subjective symptom testimony; and (2) certain medical opinion evidence. Dkt. 12 at 1.

A. <u>Subjective Symptom Testimony</u>

First, Plaintiff argues that the ALJ erred in evaluating her subjective symptom testimony. Dkt. 12 at 2–12.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). The specific, clear, and convincing standard, however, is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "The standard isn't whether our court is convinced, but instead whether

the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

At her hearing in February 2025, Plaintiff testified that she had seen many different therapists, psychiatrists, and support groups during the relevant period "because nothing has significantly changed [her] symptoms." AR 90. She testified that "some days are better than others[,]" but that "tends to depend on my sleep[,] . . . depends on my bipolar symptoms[,] . . . depends on my PTSD symptoms[,] and how anxious or depressed I am." *Id.* Moreover, Plaintiff "had some months where [she] do[es]n't get a decent night's sleep for, you know, two months at a time[,] or four months at a time[,] or nine months at a time." AR 91. Plaintiff tried "a lot of different medications . . . I've been to multiple sleep doctors. I've had sleep apnea tests. I've been going to sleep hygiene clinics, courses to try and, you know, better my sleep." *Id.* Plaintiff went on to testify that her sleep issues made her mood "a lot more volatile. [She] get[s] more depressed[,] . . . [she is] not able to leave the house because [she is] so exhausted." *Id.* In turn, due to "exhaustion . . . [Plaintiff's] mental health plummets." AR 92.

The ALJ found that Plaintiff's severe impairments could reasonably be expected to produce some of the alleged symptoms and did not make an explicit malingering finding. AR 23. The ALJ, therefore, was required to offer specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Smartt*, 14 F.4th at 1112.

Here, the ALJ sought to do so based upon inconsistencies with the record, improvement with medication, and Plaintiff's activities of daily living. AR 23–28. These are proper bases for

an ALJ to discount a claimant's subjective symptom testimony. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citation omitted) (noting that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (observing that a claimant "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse" subjective symptom determination).

*i. Inconsistencies with the Record*

First, the ALJ found that Plaintiff's testimony was "inconsistent because the treatment evidence for the period at issue does not support the limitations as alleged by [Plaintiff]." AR 23. In making this determination, the ALJ chronicles several years of Plaintiff's mental health records, AR 23–28, which, according to the ALJ demonstrate that, although Plaintiff "had some abnormal exam findings at times, she had generally normal mental status exam findings during treatment, including being alert and oriented and having good eye contact and attention[,] [h]er thought process was logical and linear, and her insight and judgment were good." AR 28. (internal record citations omitted). Likewise, Plaintiff's "appearance, attitude, behavior, motor activity, speech, attention, judgment, insight, thought content, and thought processes were all within normal limits[,]" and she was "calm, cooperative, and pleasant and had normal speech. Her memory and attention were intact, and her fund of knowledge was within normal limits." *Id.* (internal record citations omitted).

Plaintiff argues that "[d]uring the two-and-a-half year period from Plaintiff's alleged onset date through the most recent medical evidence in the administrative record, Plaintiff often

presented to her treatment providers and psychological examiners with significant objective abnormalities" including "sad or depressed/dysthymic, anxious, irritable or outright angry/hostile, exhausted, flat or constricted, labile, or 'mixed.'" Dkt. 12 at 4 (internal record citations omitted); *see also* AR 719, 851, 896, 942, 945, 950, 958, 973, 1149, 1161, 1176, 1249, 1253, 1261, 1325–26, 1334–35, 1343, 1352, 1358, 1364, 1367, 1558, 1563, 1568, 1573, 1592, 1623, 1636, 1651, 1668–89, 1693, 1703, 1970.

Indeed, despite concluding that Plaintiff's testimony was inconsistent with the record, the Court first observes that the ALJ's findings do not demonstrate an inconsistency between Plaintiff's testimony and the medical evidence of record. *Cf.* AR 23–28, 90–92. At her hearing, Plaintiff testified that "nothing has significantly changed [her] symptoms[,]" AR 90, and, as the ALJ observed, Plaintiff's mood in the relevant period was repeatedly described as "depressed, angry, irritable, and her affect was tearful, irritated, and hostile." AR 27. Plaintiff frequently expressed "suicidal ideation" at her appointments, she "dissociated," and experienced "deficits in processing speed and working memory." Dkt. 12 at 5; *see also* AR 812, 816, 827, 950, 953, 972, 1239.[2]

As Plaintiff argues, although she "sometimes had normal results on mental status examinations or specific elements of her mental status examination results were within normal range, the objective evidence of Plaintiff's mental functioning was not reasonably characterized as generally normal." Dkt. 12 at 5. In fact, the longitudinal treatment notes that the ALJ cites for this proposition of an inconsistency, more accurately, reflect a *classic* "waxing and waning" of

---

[2] Elsewhere in the decision, the ALJ acknowledged that Plaintiff "was struggling with her mood[,]" AR 24, "advised that her mood most days was 'normal to a little moody' and 'more on the depressed side.'" *Id.* The ALJ acknowledged that Plaintiff was noted to be "irritable[,] *id.*, and "reported quarterly periods of mania." AR 25. On other occasions, in the ALJ's words, Plaintiff "was distressed and tearful at times[,]" and reported "low energy and low motivation." *Id.* The ALJ has not explained how these findings demonstrate an *inconsistency* with Plaintiff's subjective symptom testimony regarding her mental impairments.

mental health symptoms, entirely consistent with Plaintiff's testimony about her severe impairments and their limiting effects on her in the relevant period. *See* AR 23–28; *see also* *Garrison*, 759 F.3d at 1017 (internal quotation marks and citation omitted) ("The fact that symptoms wax and wane in the course of treatment is to be expected; it does not create an inconsistency."). For these reasons, the Court concludes that the ALJ's finding that Plaintiff's testimony was inconsistent with the medical evidence of record was not supported by substantial evidence.

*ii. Improvement with Medication*

Next, the ALJ found that Plaintiff "advised she was struggling with her mood but noted she feels she can cope with it, and she advised that she felt her medications were keeping her mood stable." AR 28. Plaintiff argues "the evidence the ALJ cited came from treatment records in late 2022, and they covered a short period that did not reflect sustained improvement in Plaintiff's functioning." Dkt. 12 at 6. Likewise, Plaintiff argues that "notions of improvement in Plaintiff's treatment records were taken out of context and did not reflect a reasonable evaluation of the medical evidence overall." *Id.* The Court agrees.

Here, the ALJ cites records from October 2022 wherein it was noted that Plaintiff had "started [a prescription medication] in April [2022] and that has been very helpful for her." AR 847. In November 2022, Plaintiff reported that "[o]verall meds have been helpful in managing mood and anxiety[,] [m]ost recent change in meds occurred in April when [the prescription medication] was added which today [Plaintiff] reported provided very good benefit in assisting with mood swings." AR 860. Nonetheless, Plaintiff acknowledged at this same session that "she has some periods of really 'high highs' for a few days and then can crash into a deep

depression." *Id.* Finally, in December 2022, Plaintiff "states the meds are keeping her stable[,]" but still presented as "very defensive and irritable." AR 870.

Medical records from this same provider in August 2023 indicate that Plaintiff "would like to decrease [prescription medication]" and had "low energy and low motivation." AR 1091. Her medication was subsequently adjusted. AR 1093. In October 2023, Plaintiff was prescribed two new medications. AR 1118, 1127. In March 2024, it was observed that Plaintiff was "not progressing in treatment[,]" she "[t]ends to be low mood, melancholy, and fatigued [at] most appointments[,]" and her sleeping medication was subsequently "[i]ncrease[d]." AR 1171, 1174. In July 2024, Plaintiff presented as tearful at an appointment and reported that her suicidal ideations "often turns to 'a plan to OD on medications' and that her intent today is a 9, with 1 being completely safe and 10 being absolutely going to kill myself." AR 1580. Her medication was subsequently adjusted, again. AR 1666.

As Plaintiff contends, "[t]he brief bout of relative improvement that Plaintiff experienced in late-2022 was not indicative of her functioning throughout the relevant period or otherwise inconsistent with her testimony and other symptom reports." Dkt. 12 at 9. Indeed, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [their] symptoms." *Garrison*, 759 F.3d at 1017. For these reasons, the Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony on the basis that her symptoms improved with medication.

*iii. Activities of Daily Living*

Finally, the ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff "reported being able to perform household chores, watching television, going to the gym, going for walks, playing games on her phone, and spending time with others in person, on the phone,

by text, and by video chat." AR 28.[3] Moreover, Plaintiff "advised she could prepare simple meals, wash dishes, occasionally make her bed, run short errands, shop for groceries once a week, vacuum, [ ] wash laundry[,] . . . perform self-care tasks independently[,] . . . [and] noted that she enjoys art, painting, and visiting friends." *Id.*

In the context of mental health impairments, however, the "critical differences between activities of daily living and activities in a full-time job [including] that a person has more flexibility in scheduling the former than the latter, can get help from other persons[,] and is not held to a minimum standard of performance, as [the claimant] would be by an employer." *Garrison*, 759 F.3d at 1016 (ellipses and citation omitted). Our Courts have "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from [their] credibility as to [their] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ellipsis and citation omitted).

While "daily activities may be grounds for an adverse credibility finding[,] if a claimant is able to spend a substantial part of [their] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"; nonetheless, "[t]he ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (internal quotation marks, brackets, and citations omitted).

Here, the ALJ does not make specific findings as to how the cited activities demonstrate that Plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the

---

[3] The ALJ also noted that Plaintiff "went to Costa Rica for vacation [in April 2024]." AR 28. The Court observes that a claimant "need not vegetate in a dark room in order to be eligible for benefits." *Molina*, 674 F.3d at 1112–13. Plaintiff's vacation was bookended by appointments wherein she was observed to "not [be] progressing in treatment[,]" and wherein she reported "'a plan to OD on medications' and that her intent today is a 9, with 1 being completely safe and 10 being absolutely going to kill myself." AR 1580.

performance of physical functions that are transferable to a work setting." *Id.*; *see* AR 28. An ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (citation omitted). Here, the ALJ has not done so, and for this reason, the Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony based upon her activities of daily living.

In sum, the Court concludes that the ALJ erred in evaluating Plaintiff's subjective symptom testimony regarding her mental impairments, and their impact on Plaintiff's ability to work. Applying the harmless error analysis, the Court concludes that, had the ALJ properly considered this testimony, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for further proceedings.

Applying the harmless error analysis, the Court concludes that, had the ALJ properly considered Plaintiff's subjective symptom testimony, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Molina*, 674 F.3d at 1115.

B. <u>Remaining Issue</u>

Plaintiff also argues that the ALJ erred in evaluating certain medical opinion evidence offered. Dkt. 12 at 12–18.

Nonetheless, having found harmful error in the ALJ's analysis of Plaintiff's subjective symptom testimony, the Court need not address Plaintiff's remaining argument regarding the medical opinion evidence because, on remand, the ALJ is instructed to reconsider the entire sequential process, including Plaintiff's subjective symptom testimony, the medical opinion evidence, and, if necessary, Plaintiff's RFC, or the ultimate determination of disability.

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 3rd day of September, 2026.

David W. Christel
United States Magistrate Judge